

**FILED & ENTERED**

**JUL 12 2018**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** bolte    **DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>Dakarai Nyamyke Bruce,<br><br>Debtor(s).<br>_____<br>Dakarai Nyamyke Bruce,<br><br>Plaintiff(s),<br>v.<br><br>Zahira Fazilat,<br><br>Defendant(s). | Case No.: 8:14-bk-15055-MW<br>Chapter: 7<br>Adv. No: 8:15-ap-01028<br><br>**MEMORANDUM DECISION AND ORDER**<br><br>Hearing:<br>Date:    June 19, 2018<br>Time:   9:00 a.m.<br>Place:   411 West Fourth Street<br>        Courtroom 6C<br>        Santa Ana, CA 92701 |

Joshua R. Engle, Esq. of Law Office of Joshua R. Engle for Dakarai Nyamyke Bruce

Justin D. Irish, Esq. of Law Offices of Justin D. Irish for Zahira Fazilat

**WALLACE, J.**

      This adversary proceeding came on for trial on June 19, 2018 to determine whether defendant Zahira Fazilat ("Defendant") violated the discharge injunction

imposed by 11 U.S.C. § 524(a) and the automatic stay imposed by 11 U.S.C. § 362(a) in the main bankruptcy case of In re Dakarai N. Bruce, Case No. 8:14-bk-15055-MW.

The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and General Order No. 13-05, filed July 1, 2013, of the United States District Court for the Central District of California.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

On the record, each of Dakarai N. Bruce ("Plaintiff") and Defendant have waived jury trial and consented to this Court's final determination of the matters here in controversy under the rule of *Stern v. Marshall*, 564 U.S. 462, 131 S. Ct. 2594 (2011) and *Wellness International Network, Ltd. v. Sharif*, 135 S. Ct. 1932 (2015).

**FINDINGS OF FACT**

Defendant leased to Plaintiff a single family residence located at 24872 Via Sonoma, Laguna Niguel, CA 92677 (the "Property") pursuant to a Residential Lease or Month- to-Month Rental Agreement (C.A.R. Form LR, Revised 11/12) (the "Lease"). The Lease's term commenced in January 2013 and ended sometime in January 2014. Thereafter, a month-to-month tenancy was established.[1]

It would appear that rental payments due under the Lease were not timely paid by Plaintiff in May and June 2014, leading Defendant to commence unlawful detainer proceedings against Plaintiff in California state court.  Before a trial could be held in state court on the unlawful detainer actions, Plaintiff filed a chapter 7 petition in this Court on August 18, 2014.  The automatic stay imposed by 11 U.S.C. § 362(a) arose on that date.  Plaintiff listed Defendant as a creditor on Schedule F.  The Lease was not assumed by Weneta M. Kosmala, chapter 7 trustee for Plaintiff's bankruptcy estate. (Defendant's position is that the Lease was forfeited and terminated prior to the date Plaintiff filed his chapter 7 petition on August 18, 2014).[2]

---

[1] Reporter's Transcript ("R.T.") at 10, lines 12-14, 20-22.
[2] Memorandum in Support of Motion of Movant for Relief From Automatic Stay, Docket No. 12 (in the main bankruptcy case), filed September 15, 2014 at pages 9-10 of 33.

On August 23, 2014, Defendant sent her agent John Pettijohn (ph) to turn off the electricity at the Property. There was an electrical box outside the house, and Plaintiff had placed a padlock on it. Mr. Pettijohn arrived with bolt cutters, cut the padlock off, turned off the electricity and then placed a new padlock on the electrical box.[3] Defendant gave Plaintiff no prior warning or advance notice that his electricity was going to be shut off.[4] The Court finds that Defendant caused Plaintiff's electricity to be turned off as part of an effort to coerce him into paying prepetition rent arrears.

On August 25, 2014, Defendant, Defendant's daughter Sabrina Aziz and a third person arrived at the Property at about 7:45 p.m. to 8:00 p.m. and began banging on the door in an attempt to breach the door and enter the Property's interior.[5] They told Plaintiff that he owed them money. Plaintiff telephoned the police, and the police escorted Defendant, Sabrina Aziz and the third person from the premises.[6]

The ostensible purpose of the August 25 visit was an inspection of the Property relating to possible water damage from a plumbing leak.[7] Supposedly, Plaintiff had raised a defense of habitability in his answer in the unlawful detainer proceeding, and Defendant on August 25 was purporting to follow up on that with an inspection. The Court finds that this was merely a pretext on Defendant's part and that the real purpose of the August 25 visit was to intimidate Plaintiff into paying the rent arrears.

Plaintiff's profession was the financial services business. He had been engaged in the business of selling financial products for about 10 years. He worked for the Automobile Club of Southern California and had been earning in excess of $100,000 per annum. Beginning in January 2014, he moved over to Capstone Partners and continued in the financial services business. His expectation, and his reason for moving

---

[3] R.T. at 16-17.
[4] R. T. at 17. Defendant's testimony contradicts Plaintiff's testimony on sending Mr. Pettijohn to cut off Plaintiff's electricity, but the Court does not regard her testimony as credible on this point.
[5] R.T. at 18, lines 15-22.
[6] R.T. at 18-19.
[7] R.T. at 78.

to Capstone Partners, was that he would be earning about $300,000 per year.[8]  Plaintiff received a leadership award at Capstone Partners in recognition of his production.[9]

Defendant's daughter, Sabrina Aziz, contacted Capstone Partners' legal compliance officer, David Bennett, on or about October 17, 2014, purportedly to ask for Plaintiff's address so that he could be served with process.[10]  Mr. Bennett spoke with Plaintiff's supervisor, Evan Osborne, regarding the matter.[11]

Mr. Osborne's understanding was that a Capstone Partner's employee who commenced a bankruptcy proceeding likely would not be permitted to continue as an employee because such person would not have good standing to offer financial advice to customers.[12]  Indeed, even if someone had filed bankruptcy within the past three to five years, such person probably would not be hired because of the detrimental effect on reputation.[13]

Within one week after Sabrina Aziz's contact with David Bennett, Capstone Partners informed Plaintiff that he had a choice:  either resign or be fired.[14]  Plaintiff understood that if he had been fired, he would have been blacklisted in the financial services industry.[15]  He resigned his position with Capstone Partners by a resignation letter dated October 24, 2014.[16]  Plaintiff suffered the loss of "a couple of months" of employment as a result of losing employment at Capstone Partners.[17]  His income declined to approximately $50,000 to $60,000 per annum.[18]

These multiple actions by Defendant and her agents against Plaintiff caused Plaintiff suffering in the form of anxiety, stress and "a lot of consternation."[19]

---

[8] R.T. at 11-13.
[9] R.T. at 13, lines 9-12.
[10] R.T. at 55, lines 16-25, 56, lines 1-5, 80, lines 22-25, 81, lines 1-14.
[11] R.T. at 55, lines 6-24.
[12] R.T. at 65-66.
[13] R.T. at 66-67.
[14] R.T. at 21-22.
[15] R.T. at 24, lines 14-21.
[16] Plaintiff's Exhibit 9.
[17] R.T. at 33, lines 16-19.
[18] R.T. at 34, lines 8-9.
[19] R.T. at 35.

Plaintiff was granted a discharge on December 8, 2014.

On September 16, 2014, Defendant filed a motion for relief from the automatic stay pursuant to 11 U.S.C. 362(d)(1) to permit the state court unlawful detainer case against Plaintiff to proceed so that Defendant could recover possession of the Property and so that the state court could award "[a]ll postpetition rents, attorney's fees, and costs" to Defendant.[20]  The Court held a hearing on December 22, 2014, orally granted the Lift Stay Motion in part, denied extraordinary relief and directed Defendant's attorney, Gregory Sproul, Esq. ("Mr. Sproul"), to lodge an order through the Court's LOU system within seven days.  Mr. Sproul failed to timely obey the Court's oral order to lodge a form of order within seven days.  As a result, the Order Granting Motion for Relief From Stay Under 11 U.S.C. § 362 (Unlawful Detainer), Docket No. 39, filed and entered January 13, 2016 (the "Lift Stay Order"), did not issue for more than an entire full year.  The Lift Stay Order denied the extraordinary relief prayed for in the Lift Stay Motion, namely, that portion of the Lift Stay Motion requesting that the state court be permitted to award "[a]ll postpetition rents, attorney's fees, and costs" to Defendant.

An unlawful detainer trial was held in state court on December 31, 2014.  The state court found in favor of Defendant. Judgment was entered on January 8, 2015 for possession of the Property plus $12,995 in holdover damages and $600 in attorney's fees.  Mr. Sproul was Defendant's attorney in the state court trial.

The state court judgment was later vacated on appeal.  The state court held a new trial on May 10, 2017 and again found in Defendant's favor.  Defendant was awarded $15,016.56 in holdover damages and $1,200 in attorney's fees pursuant to a Judgment filed on May 31, 2017 (the "2017 Judgment").

## CONCLUSIONS OF LAW

Plaintiff contends that Defendant's actions as described above violated the automatic stay imposed by 11 U.S.C. § 362(a) and the discharge injunction provided in

---

[20] Notice of Motion and Motion For Relief From the Automatic Stay or For Order Confirming That the Automatic Stay Does Not Apply Under 11 U.S.C. § 362(l) (the "Lift Stay Motion"), Docket No. 12, filed September 16, 2014, at page 6 of 33 (numbered paragraph 13).

11 U.S.C. § 524(a).  The Court discusses these allegations below.

## Violations of the Automatic Stay.

The automatic stay enjoins acts "to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1).  The automatic stay also enjoins "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).  In this case, the automatic stay arose on the petition date, August 18, 2014 and continued <u>as to the Plaintiff</u> until December 8, 2014.  1 U.S.C. § 362(c)(2)(C).  The automatic stay continued <u>as to property of the bankruptcy estate</u> until such property was no longer property of the estate.  11 U.S.C. § 362(c)(1).  The automatic stay remains in effect as to property of the estate even after a discharge issues.  *In re Rich,* 544 B.R. 436 (Bankr. E.D. Cal. 2016).  Under 11 U.S.C. § 362(k), an individual injured by any willful violation of the automatic stay is entitled to recover actual damages, including costs and attorney's fees, and in appropriate circumstances may recover punitive damages.

The actions recounted above of Defendant and her agent John Pettijohn on August 23, 2014 and of Defendant and her daughter on August 25, 2014 were intended to intimidate Plaintiff and to coerce him into paying prepetition debts.  These actions are willful violations of the automatic stay.

Although Defendant's daughter contends that her telephone call to Capstone Partners on or about October 17, 2014 was for the purpose of obtaining Plaintiff's address so that he could be served with process, this explanation rings false: Defendant obviously knew where Plaintiff was living because he was living at the Property and she was striving to have him evicted from the Property.  The Court concludes that Defendant's daughter telephoned Capstone Partners to get Plaintiff in trouble with his employer in connection with his commencement of a bankruptcy case. The strategy succeeded:  Plaintiff lost his job as a result of this telephone call.  The telephone call to Plaintiff's employer was payback for Plaintiff not paying his prepetition

debt to Defendant (i.e., prepetition rent arrears) and, as such, constitutes a willful violation of the automatic stay as an action to recover a prepetition debt.

<u>Violation of the Discharge Injunction</u>.

The discharge injunction voids any judgment <u>at any time obtained</u>, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under 11 U.S.C. § 727 of the Bankruptcy Code. Section 727(b) discharges the debtor "from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case . . ."

11 U.S.C. § 502(g) provides that a claim arising from the rejection under section 365 of an executory contract or unexpired lease of the debtor that has not been assumed shall be allowed or disallowed "the same as if such claim had arisen before the date of the filing of the petition."

There is no dispute that the lease of the Property by Plaintiff was neither assumed nor rejected by the panel trustee in this case. By operation of law under 11 U.S.C. § 365(d)(1), the lease was deemed rejected in these circumstances. Defendant's claim for damages, including damages for holdover and any claim for attorney's fees, is treated as a prepetition claim under 11 U.S.C. § 502(g) and was discharged under 11 U.S.C. § 727(b). Therefore, the 2017 Judgment for $15,016.56 in holdover damages and $1,200 in attorney's fees is void and of no effect, and this Court so finds and so determines.

Even if it were the case that both the lease of the Property and Plaintiff's legal or equitable possessory interest therein terminated prepetition,[21] the outcome described above would not change. If the lease terminated prepetition, Defendant's claim for holdover damages and attorney's fees would be a prepetition claim because the lease

---

[21] Although it is clear that a judgment for possession of property obtained by a landlord in an unlawful detainer action terminates a tenant-debtor's legal or equitable possessory interest in the property, it is unlikely that a mere three day notice (such as the notice given here prepetition) terminates such interest. *Eden Place, LLC v. Perl (In re Perl)*, 811 F.3d 1120, 1129-1130 (9th Cir. 2016).

was rooted in Plaintiff's prepetition past and was an unmatured contingent debt as of the petition date and merely became mature when Plaintiff held over postpetition in his occupancy of the Property. *See Goudelock v. Sixty-01 Assoc. of Apartment Owners*, No. 16-35384, 2018 U.S. App. LEXIS 18687 (9th Cir., July 10, 2018); *Matter of Rosteck*, 899 F.2d 694 (7th Cir. 1990). As such, it would be discharged, with the end result that the 2017 Judgment is void and of no effect under 11 U.S.C. § 727(b).

Damages.

Plaintiff's evidence of damages is somewhat thin. He testified that he suffered stress, anxiety and consternation as a result of Defendant's multiple violations of the automatic stay. He lost his job at Capstone Partners and suffered "a couple of months" of unemployment. His income has been reduced to $50,000 to $60,000 per annum. However, although he testified that he projected or expected that his income at Capstone Partners would amount to $300,000 per annum, he provided no documentary evidence of income actually earned while he was employed at Capstone Partners. Although a loss of electricity in the month of August in southern California for any extended period of time could be expected to result in refrigerated food spoilage, no evidence was introduced on this.

"Stress, anxiety and consternation" is shorthand for emotional distress. 11 U.S.C. § 362(k) permits an award of emotional distress damages if the bankruptcy petitioner (1) suffers significant harm, (2) clearly establishes the significant harm, and (3) demonstrates a causal connection between that significant harm and the violation of the automatic stay (as distinct, for instance, from the anxiety and pressures inherent in the bankruptcy process). *Snowden v. Check into Cash of Wash., Inc. ((n re Snowden)*, 769 F.3d 651, 656-657 (9th Cir. 2014). Each of the three elements is present here and has been shown through Plaintiff's testimony. Objectively, Plaintiff suffered loss of electricity, destruction of personal property, attempted forcible entry of his dwelling and, worst of all, loss of his job. The Court finds totally credible Plaintiff's testimony as to the serious emotional harm he suffered from Defendant's actions in this case. Such

Main Document    Page 9 of 10

emotional harm was not fleeting – it was recurring and experienced over several months.  Subjectively, any normal person would experience stress, anxiety and consternation if subjected to such matters, and such stress, anxiety and consternation would far exceed the anxiety and pressures of the bankruptcy.   Ordinary creditors generally do not shut off a debtor's electricity, attempt to force their way into a debtor's residence or attempt to engineer a debtor's job loss nor are these things experienced by the typical debtor in the typical bankruptcy case.

This brings the Court to the next issue, whether punitive damages are appropriate.  An award of punitive damages requires a showing of reckless or callous disregard for the law or rights of others.  *Snowden, supra,* 769 F.3d at 657.  Plaintiff's elderly and legally blind mother was living with him at the Property.  It matters not whether Defendant knew this or not.  She was under a duty to determine that a termination of electricity service would not have dire consequences before embarking on this reckless and callous course of action. Because elderly people are sometimes dependent upon electricity to power air conditioners or operate medical equipment essential for their very survival, termination of electricity service can have dire consequences.  It was wrong for Defendant to terminate Plaintiff's electricity service, but to do so before determining that the shut off would not have such dire consequences to Plaintiff and anyone living with him was reckless and callous in the extreme.  Punitive damages are warranted here under *Snowden.*

The Court concludes that Plaintiff is entitled to actual damages of $12,500.00 plus punitive damages of $2,500.00 (for a total of $15,000.00) in respect of the stay violations described above.  Additionally, attorney's fees and costs are awarded to Plaintiff.

With respect to monetary sanctions for a discharge injunction violation, the Court notes that the United States Court of Appeals for the Ninth Circuit has recently held that in the context of a discharge injunction violation, monetary sanctions can be imposed only if the movant shows that the creditor "knew the discharge injunction was

applicable." *Lorenzen v. Taggart (In re Taggert)*, 888 F.3d 438, 443 (9th Cir. 2018). Additionally, "the creditor's good faith belief that the discharge injunction does not apply to the creditor's claim precludes a finding of contempt, even if the creditor's belief is unreasonable." *Id.* at 444.

Here, there is no doubt that Mr. Sproul (Defendant's attorney) had a good faith belief that he was properly bringing an action in state court for holdover damages and attorney's fees. The Court therefore declines to impose monetary sanctions for the discharge injunction violation that occurred. 11 U.S.C. § 524(a)(2). However, this in no way disturbs the Court's determination that the 2017 Judgment is void and of no effect pursuant to the plain language and meaning of 11 U.S.C. § 524(a)(1).

## CONCLUSION

Defendant is liable to Plaintiff for a total of $15,000.00, comprised of $12,500.00 in actual damages and $2,500.00 in punitive damages, plus attorney's fees and costs incurred by Plaintiff. The 2017 Judgment is declared to be void and of no effect.

Plaintiff shall file a declaration as to his attorney's fees and costs on or before August 31, 2018 together with a form of judgment.

**IT IS SO ORDERED.**

###

Date: July 12, 2018

Mark S. Wallace
United States Bankruptcy Judge